UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

vs.                                         CRIMINAL ACTION NO. 3:16CR33-DJH

LOUIS CHARLTON                                              DEFENDANT

*– Filed Electronically –*

**<u>UNITED STATES' RESPONSE TO MOTION TO SUPPRESS</u>**

Comes the United States of America, by counsel, Assistant United States Attorney Jo E.

Lawless, in response to Louis Charlton's motion to suppress and states its objections thereto.

For the reasons that follow, the motion should be **DENIED**.

<u>MEMORANDUM IN SUPPORT</u>

**A.  Factual and procedural background**

On or about November 16, 2015, a Louisville Metro Police Department (LMPD)

Confidential Informant (CI) informed Detective Hannah Carroll of the LMPD Mobile 9th Unit

that Charlton was a narcotics supplier from whom the CI had been buying cocaine for the last

two years.  The CI also advised that Charlton had been observed to be in possession of a firearm.

That same day, law enforcement officials utilized the CI to conduct a controlled purchase of

approximately one ounce of cocaine from Charlton, using ATF Agent Cashier Funds, for the

price of $700.00.

LMPD Detectives and ATF Special Agents conducted surveillance of the meet/buy

location (Charlton's residence), prior to and during the meet/buy.  An NCIC check revealed both

Charlton his wife used the address on S. 5th Street in Louisville.  LMPD observed two vehicles parked in front of the S. 5th Street residence.  Both vehicles were registered to Charlton's wife.

The CI was outfitted with an audio transmitting device so as to capture the transaction with Charlton.  Law enforcement officials conducted a pat down of the CI before and after the buy for contraband.  Law enforcement officials drove the CI to the area of Charlton's residence. The CI placed a telephone call to Charlton at cellular telephone number 502-XXX-5170, registered to Charlton's wife.

The CI and Charlton set up the purchase arrangements, including the quantity of crack cocaine. Law enforcement officials watched the CI walk to Charlton's residence where the CI entered through the rear door.  The CI completed the transaction of purchasing crack cocaine and returned to the designated meet location.  An ATF agent field tested the substance from the controlled purchase.  The test reflected a positive result for cocaine.  Law enforcement officials met with the CI after the purchase for evidence collection and to gather information of events.

Following the controlled purchase on November 16, 2015, law enforcement officials obtained and served a state search warrant, at the S. 5th Street address. LMPD K9 participated in the execution of the warrant.  The K9 indicated positive for narcotics while in the residence. Officers found a Springfield, Model XDS 3.3, .45 caliber semiautomatic pistol (black and silver in color) bearing serial number XS561475, located on the floor in the living room next to the coffee table where narcotics and paraphernalia were also discovered.  Additionally, officers located a SCCY, Model CPX-2, 9mm semiautomatic pistol (pink in color) bearing serial number 193958,  lying on the coffee table in plain view next to the narcotics.  Law enforcement officials also discovered assorted ammunition, a holster and magazine, approximately 51.8 grams of suspected crack cocaine, approximately 63.7 grams of suspected marijuana, assorted

paraphernalia, assorted surveillance equipment, multiple cellular telephones and $96,004.00 in United States Currency.  The firearms were checked and determined to not be reported stolen.

Law enforcement officials conducted two interviews of Charlton.[1]  They did so after advising him of his *Miranda* rights.  Charlton agreed to talk and stated that he received illegal narcotics from and individual known to law enforcement, who delivered the narcotics to Charlton's residence.  Charlton said he (Charlton) only sold to people he knew and maintained a regular customer base.  Charlton stated that he had purchased the .45 caliber semiautomatic pistol for $300.00 from an individual known to law enforcement in the Park Hill area.  He stated that he had purchased guns from that individual in the past.  Charlton claimed that he was not a user, but sold cocaine and other illegal narcotics for profit after cutting the narcotics with other substances.

A few days later, law enforcement officials again met with Charlton – at Charlton's request – while at Louisville Metro Corrections.  After being advised of his constitutional rights, and waiving those rights, Charlton provided much of the same information he had given during the first two interviews.  Charlton talked about his source of supply for controlled substances and firearms.  He also discussed information he had concerning other criminal activity in the area.  Law enforcement officials arrested Charlton on state charges on November 16, 2015.  This Court authorized issuance of a federal Criminal Complaint and Arrest Warrant for Charlton on December 17, 2015.  *See* 3:15MJ554 DN 1; 3:16CR33-DJH DN 1.  Charlton made his initial appearance in federal court on February 26, 2016.  (DN 4).

---

[1] Law enforcement officials first talked to Charlton at his home.  They transported him to a police location and conducted a follow-up interview, which was recorded.  A copy of the recorded interview and written summary of both interviews were previously provided to the defense as part of the discovery in this case.

A federal grand jury sitting in Louisville, Kentucky, returned a four-count Indictment against Charlton on March 16, 2016.  (DN 9).  The Indictment charged Charlton with the following offenses:

    Count 1 – 21 U.S.C. § 841(a)(1) - (possession w/intent to distribute cocaine)
    Count 2 – 21 U.S.C. § 841(a)(1) – (distribution of cocaine)
    Count 3 – 18 U.S.C. § 924(c)(1) – (carrying firearm during / in relation to drug trafficking)
    Count 4 – 18 U.S.C. § 922(g)(1) – (felon in possession of firearm)

Charlton initially appeared for arraignment on the original Indictment on March 24, 2016. Through counsel, he entered pleas of not guilty.  The presiding Magistrate Judge entered a pretrial Order following the arraignment. (DN  18).  Among other things, the pretrial Order set deadlines for pretrial motions.  *See* DN 18 at paragraph (3).

In June 2016, Charlton filed a sealed motion to dismiss.  *See* DN 24.  At no point did he file a motion to suppress.  On July 20, 2016, the grand jury returned a Superseding Indictment. (DN 37).  The only change from the original Indictment concerned Count 2.  The controlled substance, upon laboratory analysis, was determined to be cocaine base, commonly referred to as "crack" cocaine.  Charlton appeared for arraignment on the Superseding Indictment on July 27, 2016.  (DN 41).  The Court entered a scheduling Order primarily addressing the pending motion to dismiss. (DN 41).   Following an evidentiary hearing and further briefing, the Court denied the motion to dismiss.  (DN 48).

The Court scheduled a status conference on October 18, 2016.  Following the conference, the Court entered a scheduling Order, including deadlines for the filing of pretrial motions.  (DN 52).  The parties filed a joint motion to continue the trial.  (DN 56).  The Court granted the motion to continue and entered a scheduling Order, including deadlines for the filing of pretrial

motions.  (DN 57).  Among other things, the Court set a deadline of January 20, 2017, for filing

suppression motions.  *Id*. at paragraph 4.

On January 31, 2017, Charlton, through counsel, filed a motion to accept late filings.  (DN

60).  In particular, he sought leave to file an untimely motion to suppress (DN 61) related to the

state search warrant executed on his home in November 2015.


**B.  Charlton failed to file the motion in a timely fashion**

The pretrial Orders entered in the case at bar consistently established deadlines for the

filing of, among other things, suppression motions.  Most recently, the Court set a January 20,

2017, deadline for the filing of all motions to suppress.  (DN 57).  Charlton filed the instant

motion on January 31, 2017, well after the deadline had passed.

Federal Rule of Criminal Procedure 12(b)(3)(C) provides that a motion to suppress

evidence must be made before trial.  District courts have discretion to set deadlines for pretrial

motions to suppress.  *Id*. at 12(c).  Rule 12 also includes instruction regarding the consequences

for not making a timely filing.  "If a party does not meet the deadline for making a Rule 12(b)(3)

motion, the motion is untimely. But a court may consider the defense, objection, or request if the

party shows good cause." Fed. R. Crim. P. 12(c)(3).

A pretrial motion made pursuant to Federal Rule of Criminal Procedure 12(b)(3) is

untimely if filed after a deadline set by the district court pursuant to Rule 12(c)(1).  Fed. R.

Crim. P. 12(c)(3).   But a district court may entertain an untimely motion "if the party shows

good cause." *Id.*  "When a party files an untimely motion in the district court, and the district

court finds facts to determine whether the late movant has satisfied the good-cause standard, we

review that determination for an abuse of discretion." *United States v. Trujillo-Molina*, 2017 WL

455881 at *2 (6th Cir. Feb. 2, 2017)(quoting *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015) (citing *United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010)); *see also United States v. Edmond*, 815 F.3d 1032, 1043–44 (6th Cir. 2016).[2](footnote in original *Trujillo-Molina* opinion).  In general, a "district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *Soto*, 794 F.3d at 645 (citation omitted).

The *Trujillo-Molina* court determined that upon "consideration of all interests" in this case, they could not say that the district court erred when it denied the defendant's motion to dismiss.  *Trujillo-Molina*, 2017 WL 455881 at *2 (citing Fed. R. Crim. P. 12(c)(3) advisory committee's notes to 2014 amendment).  The Court of Appeals determined that the district court correctly noted that Rule 12(c)(3) requires a showing of good cause.  *Id.*  We have explained that showing cause "'often requires developing and analyzing facts' to assess whether the defendant can justify the late filing ... and prejudice." *Id*. (quoting *Edmond*, 815 F.3d at 1043 (internal quotation marks omitted) (citing *Davis v. United States*, 411 U.S. 233, 244–45, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *Soto*, 794 F.3d at 635), *petition for cert. filed*, (Aug. 4, 2016 U.S.) (16-5461). "Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion." *Walden*, 625 F.3d at 965. At

---

[2] In *United States v. Meda*, 812 F.3d 502, 510 (6th Cir. 2015), a panel of this court applied *Soto* and used a plain error standard of review in a case where the defendant had filed an untimely motion below. The explanation in *Meda* is missing a key fact, the absence of which can lead to confusion for unwary counsel. So, for clarity's sake, we address that here. Meda filed a motion to dismiss the indictment *after* he filed a notice of appeal from the entry of judgment, and the district court declined to hear it on jurisdictional grounds. In effect, then, Meda raised his claim for the first time in his appellate brief. Following *Soto*, it was proper for this court to review the claim raised on appeal for plain error. To reiterate the various standards of review that can apply: a party who fails to make a timely motion pursuant to Rule 12(b)(3) has not necessarily waived appellate review of the issue he failed to raise, but we will review the issue raised for the first time on appeal for plain error. *See Soto*, 794 F.3d at 655. This includes an untimely motion made after the district court no longer has jurisdiction. *See Meda*, 812 F.3d at 510. Where, as here, a party makes an untimely motion in the district court, and the district court finds that the party has not shown good cause for the motion's untimeliness, we review for abuse of discretion. *See Soto*, 794 F.3d at 655.

a minimum, a party must "articulate some legitimate explanation for the failure to timely file." *Id.*

The United States acknowledges that the Court may grant relief from refusing the entertain an untimely motion, for good cause.  Nothing in Charlton's motion demonstrates good cause for his failure to comply with the pretrial motion deadline.  The existence of the state search warrant has been referenced in multiple documents in the record of this action, beginning with the affidavit in support of the criminal complaint.  Defense counsel has had access to the state search warrant since the initial discovery disclosures.  Moreover, the defense engaged in earlier Rule 12 motion practice.  For the first time, more than one year after the filing of the Criminal Complaint and ten months after arraignment on the initial Indictment, Charlton filed the instant motion to suppress. Simply put, the nature and circumstances giving rise to Charlton's arrest – including execution of a state search warrant -- were far from secret.  Charlton "had everything that he needed to challenge the [evidence] in question by" the filing deadline established by the Court.  *See United States v. Musick*, 2008 WL 4090648 at **14 (6th Cir. (ED TN) Aug. 29, 2008).  The instant motion fails to demonstrate good cause for the failure to be filed in a timely fashion.


**C.  The state search warrant established probable cause**

Charlton complains that the state search warrant did not issue upon a finding of probable cause.  Specifically, he complains that the affidavit fails to allege that the confidential informant was ever inside his home, indicate a time period for when the informant saw Charlton in possession of a firearm or provide a description of the firearm.

Probable cause supports a search warrant when the affidavit demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Powell*, 2017 WL 474343 at *5 (6th Cir. Feb. 6, 2017)(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  Notably, Charlton fails to cite any authority requiring the specificity he claims is lacking from the affidavit.

The Sixth Circuit recently had occasion to consider the sufficiency of a search warrant affidavit similar facts in *United States v. Crumpton*, 827 F.3d 593 (6th Cir. 2016).  While the *Crumpton* court focused on a challenge to the reliability of the confidential informant, the opinion provides guidance concerning what is necessary to establish probable cause to search a specific place.

"To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *Crumpton,* 827 F.3d at 615 (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). An affidavit based on information provided by a confidential informant, prompts us to "consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information."  827 F.3d at 615-616 (citations omitted). "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *Crumpton*, 827 F.3d at 616 (citations omitted).  At the same time, "independent corroboration of the tip by police is not required when the court is provided with assurances that the informant is reliable." *Crumpton*, 827 F.3d at 616 (citing *United States v. Thomas*, 605 F.3d 300, 307 (6th

8

Cir. 2010)). "In such cases, the affiant need only attest 'with some detail' that the informant provided reliable information in the past." *Crumpton*, 827 F.3d at 616 (citing *Thomas*, 605 F.3d at 307 (quoting *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005))).

Like the case in Crumpton, the instant warrant affidavit was more detailed than Charlton claims.  In *Crumpton*, the court upheld a finding of probable cause based on an affidavit that included the following:

1.   Officer Farris "received a tip that a black/male residing in [the Sloan Street Residence] was selling crack-cocaine and heroin from this residence."

2.   Farris "met with an established confidential informant" who identified Crumpton as the individual who was selling narcotics from the house, and Farris then used that same informant to conduct a controlled purchase of narcotics.

3.   Farris searched the informant immediately before the purchase, and watched the informant enter and exit the house.

4.   Farris subsequently learned from the same informant that Crumpton regularly sells narcotics from that location.

5.   Finally, the affiant swore that the confidential informant "has previously proved to be a credible and reliable source of information, whose past information has led to the successful seizures and confiscations of large quantities of narcotics, prescription pills, illicit narcotics proceeds, and firearms, along with successful criminal convictions of narcotics sellers."

*Crumpton*, 827 F.3d at 616.  Officer Farris's close supervision of a controlled purchase of narcotics supplies independent corroboration of the confidential informant's tip. *Crumpton*, 827 F.3d at 616 (citing *United States v. Coffee*, 434 F.3d 887, 893–95 (6th Cir.) (tip was sufficiently

corroborated where an officer watched a confidential informant entering and exiting the residence from which narcotics were allegedly being sold and searched the informant before and after the controlled buy), *cert. denied*, 547 U.S. 1158 (2006). Nor is this a case in which the affidavit was entirely lacking in a description of the informant's reliability. *Crumpton*, 827 F.3d at 616. Although the informant was not named, "there is no requirement that an informant be named either in the affidavit or the search warrant." *Crumpton*, 827 F.3d at 616 (quoting *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006), *cert. denied*, 550 U.S. 961 (2007)). Instead, "the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *Crumpton*, 827 F.3d at 616 (quoting *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001)). "Officer Farris did just that . . . . Accordingly, the affidavit was sufficient to support a finding of probable cause." *Crumpton*, 827 F.3d at 616.

In the same way, Detective Carroll identified the original source of information as a "credible and reliable confidential informant . . . who has been involved in narcotics and firearm trafficking for an extended period of time. The informant is familiar with the way narcotics are packaged, weighed, transported, sold and used. The CI has provided affiant with credibable [sic] and reliable information that led to other arrest and investigations. Affiant corroborated all information that CI provided in the past, as well as, information provided during the current investigation." *See* Affidavit attached to DN 61-2 at page 4. The affidavit went on to provide general information about Charlton's involvement in drug trafficking and unlawful possession of firearms as well as his criminal record and gang affiliation. *Id*.

Charlton's motion, however, overlooks the next steps taken by Detective Carroll as set out in the affidavit. Acting on the information referenced above, Detective Carroll verified Charlton's address (as described by the informant) and observed the vehicles previously

described by the CI at Charlton's residence.  The registration for the vehicles came back to an individual described by the CI as Charlton's girlfriend.

The affidavit also established that within 48 hours of seeking the search warrant, Detective Carroll, utilizing the CI, conducted a controlled purchase of narcotics from Charlton at the residence which was the subject of the search warrant.  After the controlled purchase, law enforcement officials noticed multiple short stays as the address – characterized by Detective Carroll as indicative of drug trafficking.  According to the affidavit, "[t]he informant has seen and stated that CHARLTON keeps firearms at his address, 3937 S. 5th St."

Detective Carroll goes on, in the affidavit, to provide information based on her prior training and experience concerning the characteristics and habits of drug traffickers – including their possession and use of firearms to protect their drugs and money.  Additionally, she noted (based on training and experience) that individuals who illegally possessed firearms are known to keep their guns for long periods of time.  The affidavit concluded with tying the past experiences of law enforcement with Charlton to the recent controlled purchase of narcotics and the common behaviors of drug traffickers.

The totality of the information set out in the affidavit clearly established probable cause to believe that evidence of drug trafficking and firearms violations would be found at the residence which was the subject of the search warrant.  Charlton's motion must fail.


**D.  Law enforcement officials relied on the search warrant in good faith**

The purpose of the exclusionary rule is to deter Fourth Amendment violations.  *Powell*, 2017 WL 474343 at *5 (citing *Herring v. United States*, 555 U.S. 135, 140–41 (2009)).  Stated differently, "the sole purpose of the exclusionary rule 'a judicially created remedy that bars the

government from introducing evidence obtained through illegal searches and seizures' is to deter future law enforcement officers from violating the Fourth Amendment." *Davis v. United States*, 131 S.Ct. 2419, 2426 (2011). But the exclusionary rule is not absolute. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)("Suppression of evidence, ... has always been our last resort, not our first impulse.").

"For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis*, 131 S.Ct. at 2427. Importantly, courts will not suppress evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant," *Powell*, 2017 WL 474343 at *5 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

Probable cause supported the issuance of the state search warrant. If this Court determines otherwise, the law enforcement officials involved in execution of the search did not know that. They reasonably relied, in good faith, on the state court's determination to issue the search warrant. Additionally, their actions following execution of the search warrant, including the arrest and subsequent interviews of Charlton did not violate constitutional principles.

Conclusion

Charlton failed to file the motion to suppress within the deadline provided in the Court's pretrial Order. He has not shown good cause for his failure to comply with the pretrial Order deadline. Therefore, the motion should be **DENIED** as untimely.

Should the Court determine that good cause has been shown, the facts and circumstances of the case clearly show that probable cause supported issuance of the state search warrant. Additionally, the law enforcement officials acted in good faith reliance on the lawfully issued

search warrant when searching Charlton's home as well as their actions thereafter.  The instant

motion is supported by neither facts nor law.  Consequently, it should be **DENIED**.

The motion to suppress does not raise issues of contested facts, but rather, questions of

law.  Therefore, no evidentiary hearing is necessary.

Respectfully submitted,

JOHN E. KUHN, JR.
United States Attorney

/s/ *Jo E. Lawless*
Jo E.  Lawless
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 625-7065
Fax (502) 582-5097

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent *via* the Court's ECF system to
defense counsel on February 14, 2017.

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney

13