UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                                  Plaintiff,

v.                                                             Criminal Action No. 3:16-cr-33-DJH

LOUIS CHARLTON,                                                          Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

      Louisville Metro Police Department (LMPD) and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) executed a search warrant at Defendant Louis Charlton's residence and found drugs, drug paraphernalia, and a large amount of currency. (Docket No. 24, PageID # 62) Charlton was detained during the search and was later Mirandized and questioned by law enforcement officers. (D.N. 61-1, PageID # 319) The defendant now argues that the search warrant failed to establish probable cause and has moved to suppress all evidence and statements obtained as a result of the search.[1] (D.N. 61) Because the Court finds that the search warrant established probable cause and, alternatively, the motion to suppress was filed out of time, without good cause for delay, the defendant's motion to suppress will be denied.

**I.    BACKGROUND**

      On November 16, 2015, the LMPD and ATF executed a search warrant at the defendant's residence. (D.N. 24, PageID # 62) The search revealed cocaine, marijuana, drug paraphernalia, firearms, and "a large amount of U.S. currency." *(Id.)* The defendant states that he "was present

---

[1] The search and arrest were previously addressed in a motion to dismiss (D.N. 24), which the Court denied. (D.N. 48) The Court held an evidentiary hearing on the motion to dismiss; the parties and Court agreed that a hearing on the instant motion to suppress is unnecessary.

in the residence and was detained by the officers and Mirandized." (D.N. 61-1, PageID # 319) He then made incriminating statements during a recorded conversation with police. (*Id.*)

The defendant now asserts that the search warrant failed to establish probable cause to search his residence and has moved to suppress "all fruits of search and all statements attributed to the defendant." (*Id.*, PageID # 319–21) In relevant part, the search warrant states:

> Affiant received information from a credible and reliable confidential informant (CI) . . . , who has been involved in narcotic and firearm trafficking for an extended period of time. The informant is familiar with the way narcotics are packaged, weighed, transported, sold and used. The CI has provided affiant with creditable and reliable information that led to other arrest [sic] and investigations. Affiant corroborated all information that CI provided in the past, as well as, information provided during current investigation.
>
> CI informed affiant that Louis CHARLTON, aka "Freaky Lou" was in possession of a firearm and is selling large amount of powder and crack cocaine out of his residence at 3937 South 5th Street. CI further stated that CHARLTON and his girlfriend . . . are driving a gold Lexus SUV and a red Dodge Challenger.
>
> Affiant contacted other law enforcement officers who are familiar with CHARLTON from a previous case. Affiant was advised that CHARLTON shares his residence with [his girlfriend]. Affiant was advised by other law enforcement officers that in 2011, 11-F-005488, CHARLTON consented to a search of his residence he shared with [his girlfriend] at 929 Burton Avenue, Louisville, KY 40208. During the search CHARLTON was in possession of crack cocaine, marijuana, scale and a handgun. CHARLTON is a confirmed convicted felon who is prohibited from possessing firearms. CHARLTON is also a confirmed "Park Hill Crip" gang member through LMPD data base. CHARLTON is a convicted felon . . . .
>
> Acting on the information received, affiant conducted the following independent investigation:
> Affiant was able to verify the address as described by the CI. Based on the CI's description affiant was able to locate the address and confirm that it was the same as described by informant. Affiant conducted surveillance at 3937 South 5th Street and observed a gold Lexus SUV . . . parked in front of the residence. Affiant also observed a red Dodge Challenger . . . also parked in front of the residence. Both vehicles are registered to [Charlton's girlfriend] at 3937 South 5th Street. Both CHARLTON and [his girlfriend] use the address 3937 S. 5th St.

> Within the last 48 hrs affiant conducted a controlled buy with a reliable CI who purchased narcotics from CHARLTON. After the controlled buy, detectives noticed multiple short stays at the address indicative of drug trafficking. The informant has seen and stated that CHARLTON keeps firearms at his address, 3937 S. 5th St.
>
> Affiant knows through her training and experience with LMPD that narcotic dealers frequently possess firearms to protect their narcotics and money. Affiant also knows through her training and experience that prohibited individuals, who possess firearms, are known to keep their guns for long periods of time since they are legally prohibited from purchasing firearms. Prohibited individuals also attempt to conceal firearms and other contraband in vehicles within their control.
>
> The fact that other law enforcement officers previously arrested CHARLTON for narcotics trafficking and felon in possession charges and the controlled buy is consistent with individuals who are involved in narcotic trafficking. It is further believed that CHARLTON is in possession of the handguns to protect his narcotics and money from being stolen.

(D.N. 61-2, PageID # 328–29)

The defendant argues that the search warrant lacks probable cause because: (1) "there is no allegation that the confidential informant was ever inside the Defendant's house"; (2) "[t]here is no information . . . [to] support the informant's assertion that the Defendant kept firearms at his address, other than from the fact that the police had seized a handgun from a home occupied by the Defendant[] four (4) years earlier"; and (3) "[t]he documented information that the Defendant is a 'Park Hill Crip' gang member and had felony convictions for possession of controlled substances in 1993 and 2010 is insufficient to justify a conclusion that narcotics and firearms were probably on the premises to be searched on November 16, 2015." (D.N. 61-1, PageID # 321)

Additionally, the defendant asserts that his statements to law enforcement officers following his arrest are inadmissible because the statements were obtained as a result of an allegedly "improper and unconstitutional" search of the defendant's residence. (*Id*., PageID #

3

322) Therefore, the defendant maintains that the statements "were by extension unlawfully obtained and must be suppressed." (*Id.*, PageID # 323)

The United States responds that the defendants' motion to suppress should be denied. (D.N. 63, PageID # 334) The government first argues that the defendant failed to meet the filing deadline for his motion and has not shown good cause for the delay. (*Id.*, PageID # 338 (citing Fed. R. Crim. P. 12(c)(3)) Alternatively, the United States asserts that the search warrant established probable cause. (D.N. 63, PageID # 340–44) Finally, the government maintains that even if the Court determines that the search warrant lacked probable cause, the officers "reasonably relied, in good faith, on the state court's determination to issue the search warrant" and thus the evidence should not be suppressed. (D.N. 63, PageID # 344–45)

In response, the defendant contends that he had good cause for the delay in filing. (D.N. 64, PageID # 349) Specifically, the defendant states that on January 27, 2017, defense counsel met with the defendant in the Marion County Jail to discuss a plea agreement, the defendant "declined to accept the plea agreement," and "counsel notified the attorney for United States the same day that there was no agreement." (D.N. 64, PageID # 349) The defendant then reasserts that the search warrant lacked probable cause and argues that the officers did not rely on the search warrant in good faith "because the affidavit supporting the warrant for the seizure of firearms or weapons was lacking in any facts or circumstances by which an impartial judicial officer could make an independent and neutral determination of whether probable cause existed." (D.N. 64, PageID # 350–52)

## II. DISCUSSION

### a. Probable Cause

"An affidavit submitted with an application for a warrant 'must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter.'" *United States v. Lawson*, No. 05-5598, 2006 WL 1538889, at *7 (6th Cir. June 5, 2006) (quoting *Franks v. Delaware,* 438 U.S. 154, 165 (1978)). To establish probable cause, "an affidavit must contain facts that indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *United States v. Jenkins,* 396 F.3d 751, 760 (6th Cir. 2005)).

"An affidavit . . . that is based on information provided by a confidential informant, prompts us to 'consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information.'" *United States v. Crumpton*, 824 F.3d 593, 615–16 (6th Cir. 2016) (quoting *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)). "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *Id.* (quoting *Frazier*, 423 F.3d at 532). However, "independent corroboration of the tip by police is not required when the court is provided with assurances that the informant is reliable." *Id*. (quoting *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010)). "[T]here is no requirement that an informant be named either in the affidavit or the search warrant." *Id*. (quoting *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006), *cert. denied*, 550 U.S. 961 (2007)). Rather, "the affiant need only specify that the

confidential informant has given accurate information in the past to qualify as reliable." *Id.* (quoting *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001)).

In *Crumpton*, the Sixth Circuit described the warrant affidavit as follows:

> It explains that Officer Farris "received a tip that a black/male residing in [the Sloan Street Residence] was selling crack-cocaine and heroin from this residence." Farris "met with an established confidential informant" who identified Crumpton as the individual who was selling narcotics from the house, and Farris then used that same informant to conduct a controlled purchase of narcotics. Farris searched the informant immediately before the purchase, and watched the informant enter and exit the house. Farris subsequently learned from the same informant that Crumpton regularly sells narcotics from that location. Finally, the affiant swore that the confidential informant "has previously proved to be a credible and reliable source of information, whose past information has led to the successful seizures and confiscations of large quantities of narcotics, prescription pills, illicit narcotics proceeds, and firearms, along with successful criminal convictions of narcotics sellers."

*Id*. (internal citations omitted). The Sixth Circuit found that the affidavit was sufficient to establish probable cause because the officer independently corroborated the confidential informant's tip by closely supervising the CI and the affidavit contained a description of the informant's reliability. *Id*.

As in *Crumpton*, the officer here received a tip from a "reliable confidential informant" that Defendant Charlton was in possession of a firearm and was selling powder and crack cocaine. (D.N. 61-2, PageID # 328–29) The affiant stated that in the past, the CI has provided "creditable and reliable information" that was corroborated and led to other arrests and investigations. (*Id*.) The CI provided Charlton's address and information about his cars. (*Id*.) Law enforcement officers surveilled the residence and confirmed the information. (*Id*.) The officers also used the CI to conduct a controlled buy from Charlton at the residence. (*Id*.; D.N. 63, PageID # 335) According to the affiant, "[a]fter the controlled buy, detectives noticed multiple short stays at the address indicative of drug trafficking." (D.N. 61-2, PageID # 328–29)

The affiant also stated that "the informant has seen and stated that Charlton keeps firearms at his address." (*Id.*) Therefore, as in *Crumpton*, the affiant independently corroborated much of the CI's information and "specif[ied] that the confidential informant has given accurate information in the past to qualify as reliable." 824 F.3d at 615–16.

While the defendant argues that there is not sufficient information to establish that the CI was inside the defendant's residence and knew that he kept firearms at the residence, the search warrant explicitly states that "the informant has seen and stated that Charlton keeps firearms at his address." (D.N. 61-2, PageID # 328–29) The defendant also asserts that the defendant's documented felony convictions are "insufficient to justify a conclusion that narcotics and firearms were probably on the premises to be searched on November 16, 2015." (D.N. 61-1, PageID # 321) However, the search warrant relies on more than the defendant's past convictions. The warrant states that the "reliable CI" told officers that Charlton kept a firearm at his residence. (D.N. 61-2, PageID # 328–29) Additionally, from the affiant's training and experience, she knows that "narcotic dealers frequently possess firearms to protect their narcotics and money" and "that prohibited individuals, who possess firearms, are known to keep their guns for long periods of time since they are legally prohibited from purchasing firearms." (*Id.*)

The Court concludes that the search warrant established probable cause to believe that Charlton was engaged in drug trafficking and was in possession of a firearm. *See* 824 F.3d at 615–16.

### b. Good faith

Alternatively, the United States argues that even if the search of the residence was in violation of the Fourth amendment, the evidence should not be excluded under the Supreme Court's good faith exception. (D.N. 63, PageID # 344–45) In *United States v. Leon*, the

Supreme Court held that the Fourth Amendment's exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905 (1984). The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (citing *Id.* at 922–23 n. 23). "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal quotations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 267 (1983); *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982)). However, "[a] police officer does not 'manifest objective good faith in relying on a warrant' if the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 291, 595 (6th Cir. 2004)).

As discussed above, the warrant at issue contained sufficient factual support to establish probable cause and was issued by a state court judge; therefore, it was reasonable for an officer to rely on the warrant to search the residence. *See Leon*, 468 U.S. at 922; *Brown*, 828 F.3d at 385; *Frazier*, 423 F.3d at 533. A well-trained officer would not have known that the search was illegal and would have reasonably relied on the warrant in good faith. *Id.*

### c. Timeliness

The United States argues that the motion to suppress was untimely. (D.N. 63; PageID # 338–40) The deadline for filing motions to suppress was January 20, 2017, and this was a deadline extended twice since the superseding indictment. (D.N. 52; D.N. 57, PageID # 308–09)

The defendant filed the instant motion to suppress on January 31, 2017. (D.N. 61) Rule 12(c)(3) provides that "[i]f a party does not meet the deadline for making a [motion to suppress evidence], the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Good cause is "a flexible standard that requires consideration of all interests in the particular case." Fed. R. Crim. P. 12 advisory committee's notes to 2014 amendments. "[S]howing cause often requires developing and analyzing facts to assess whether the defendant can justify the late filing . . . and prejudice." *United States v. Trujillo-Molina*, No. 16-1530, 2017 WL 455881, at *2 (6th Cir. Feb. 2, 2017) (internal quotation marks omitted) (quoting *United States v. Edmond*, 815 F.3d 1032, 1043 (6th Cir. 2016)). "At a minimum, a party must 'articulate some legitimate explanation for the failure to timely file.'" *Id.* (quoting *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010)).

In *Trujillo-Molina*, the defendant "pled guilty to possessing a firearm while being illegally and unlawfully present in the United States." *Id.* at *1. The defendant filed a motion to dismiss after the deadline, "claim[ing] that he did not seek a dismissal earlier because his strategy had been to plead guilty, to remove himself voluntarily from the United States, and to marry a citizen in order to return" but his marriage plans fell through. *Id.* Following a hearing, the district court denied the defendant's motion to dismiss as untimely, explaining that the defendant

> could not show good cause for the delay in filing the motion, so it declined to entertain the untimely motion pursuant to its authority under Federal Rule of Criminal Procedure 12(c)(3). . . . After thoroughly considering the reasons provided by Trujillo-Molina in both motions, the district court found that Trujillo-Molina had not explained why the motion was untimely; he simply referred to his marriage circumstance in his separate continuance motion. Such a change in strategy, the court held, was not good cause for an untimely motion, especially where Trujillo-Molina had known of the facts and theories underlying the motion to dismiss—namely, his DACA status—all along. The thwarted marriage required

9

him to change his strategy, but was not good cause sufficient to allow an untimely motion.

*Id*. The Sixth Circuit held that the "district court did not abuse its discretion by finding that [the defendant] could not explain his failure to timely file." *Id*. at *3. The Sixth Circuit explained that while the defendant "addressed certain circumstances, including his failed marriage plans and the government's decision not to renew his DACA status," the defendant "could have raised the underlying legal issue" earlier. *Id*.

Similarly, this Court finds that Charlton could have raised the underlying legal issue in a timely fashion and has not established good cause for the delay. The defendant states that the motion to suppress was delayed by ongoing plea negotiations. (D.N. 64, PageID # 349) However, the motion to suppress is focused on the search warrant and the fruits of that search. (D.N. 61) These issues could have been raised during plea negotiations. As in *Trujillo-Molina*, Charlton's plan may have been to plead guilty, but a change in strategy is not good cause for an untimely motion. 2017 WL 455881, at *1. Furthermore, it is not unusual for parties in a criminal case to have motion deadlines while plea negotiations are ongoing and parties are still expected to meet those deadlines. The Court concludes that the motion is untimely.

### III.    CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the defendant's motion to suppress (D.N. 61) is **DENIED**.