# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: June 06, 2018

Mr. Larry D. Simon
Simon Law Office
239 S. Fifth Street
Suite 1700
Louisville, KY 40202

Ms. Monica Wheatley
Office of the U.S. Attorney
717 W. Broadway
Louisville, KY 40202

        Re: Case No. 17-5910, *USA v. Louis Charlton*
            Originating Case No. : 3:16-cr-00033-1

Dear Counsel,

  The Court issued the enclosed opinion today in this case.

                    Sincerely yours,

                    s/Cathryn Lovely
                    Opinions Deputy

cc: Ms. Vanessa L. Armstrong

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION

No. 17-5910

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>LOUIS CHARLTON,<br><br>    Defendant-Appellant. | **FILED**<br>Jun 06, 2018<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |

BEFORE: BOGGS and GRIFFIN, Circuit Judges; HOOD, District Judge.*

    GRIFFIN, Circuit Judge.

    After defendant Louis Charlton was caught selling drugs out of his house, a jury convicted him of numerous drug and firearm crimes. On appeal, he requests that we vacate his convictions and sentence, arguing that the government promised him immunity and that he deserves a lower sentence because he accepted responsibility for his actions. We disagree, and affirm.

I.

    In November 2015, Charlton sold crack cocaine to a police informant. Because the sale took place in Charlton's house, the police obtained a warrant and searched the home. During the search, they found two pistols, 50 grams of powder cocaine, a small amount of crack cocaine, 63 grams of marijuana, more than $90,000 in cash, and other gun and drug paraphernalia.

---

    *The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

No. 17-5910
*United States v. Charlton*

Thereafter, Charlton was arrested and advised of his *Miranda* rights. He waived them, and admitted that the drugs and guns were his. He also said he was worried about his family's safety, and in response a detective said that she would watch out for his family and would give her phone number to his wife.

Police then took Charlton to the station for a second interview, which they recorded. Defendant again admitted to selling drugs. He also gave up information about others involved in drug trafficking. And a detective said that if police decided to work with Charlton, she would try to get him released on bond.

A few days later, police spoke with Charlton a third time. Defendant again waived his *Miranda* rights, and police again recorded the interview. Charlton provided much of the same information he had given during his previous interviews. And police reiterated that they would try to help him, but made no specific promises.

As it turned out, this wasn't defendant's first offense. In 2011, and again in January 2015, Charlton had been caught selling drugs and had served as a police informant. Both times he entered into cooperation agreements. The first time, his felony charges were reduced to a misdemeanor. The second time, he was never charged with a crime—he even got to keep his drug money.

But this time was different. Police decided not to use him as an informant because his information was stale. Even though they talked with him about his potential cooperation, and although he claims there was an oral agreement, they never offered him a written cooperation agreement.

Instead, the government charged Charlton with seven crimes: Distributing crack cocaine, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 1); Carrying a firearm during and in relation to a drug-trafficking crime, a violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); Possession

No. 17-5910
*United States v. Charlton*

with the intent to distribute controlled substances (cocaine, marijuana, and crack cocaine, respectively), violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 3, 4, and 5); Possessing firearms in furtherance of drug trafficking crimes, a violation of 18 U.S.C. § 924(c)(1)(A) (Count 6); and Possessing firearms as a felon, a violation of 18 U.S.C. § 922(g)(1) and 924(a)(2) (Count 7).

Charlton moved to dismiss the indictment, or in the alternative to suppress his confession, arguing that the government had promised him immunity and that the promise had coerced his confession. After holding an evidentiary hearing, the district court ruled that the government had never promised Charlton immunity and that he confessed voluntarily. So the district court denied the motion.

Before trial, the government moved to exclude arguments regarding jury nullification. In response, Charlton advised the district court that he planned to ask the jury to acquit him on the basis of the alleged immunity agreement. As part of that strategy, he wanted the district court to issue a modified entrapment-by-estoppel jury instruction. The district court ruled that Charlton's proposed defense was not viable, and accordingly granted the government's motion (thus rejecting Charlton's proposed instruction).

The jury ultimately convicted Charlton on all counts except the two armed-drug-trafficker offenses (Counts 2 and 6). At sentencing, Charlton moved for a reduction to his offense level because of acceptance of responsibility. The district court denied the motion on the grounds that Charlton had not demonstrated acceptance of responsibility.

No. 17-5910
*United States v. Charlton*

II.

Charlton now challenges the district court's refusal to: (1) dismiss the indictment; (2) suppress his confession; (3) issue a modified entrapment-by-estoppel jury instruction; and (4) reduce his offense level. We address each in turn.

A.

Charlton first appeals the district court's denial of his motion to dismiss the indictment, arguing that the government promised him immunity. The district court denied the motion on the grounds that there was no immunity agreement. We review that factual finding for clear error. *See United States v. Orlando*, 281 F.3d 586, 593 (6th Cir. 2002). To reverse, we must have a definite and firm conviction that the district court made a mistake. *Id*.

Charlton claims that the government granted him immunity in two ways. First, he contends, the government granted him immunity when a detective told him: "[W]hen you get out, call me, and I'm going to give you your phone and everything back." And second, he argues, his two prior cooperation agreements required him to repeatedly give officers information, and thus provided immunity when he spoke with officers after they searched his house.

Neither argument has merit. After reviewing the record, we find no promise of immunity. Although a detective did discuss what she would do "when" Charlton got out (which implied that he *would* get out), earlier in the conversation the same detective made clear that she would "try" to get Charlton out. Other officers made similar, non-committal statements—they said they would do what they could to help Charlton, but never promised him immunity.

Second, Charlton's contention that his prior cooperation agreements granted him immunity for future crimes lacks any basis in logic or fact. He admits that those agreements warned that the

-4-

No. 17-5910
*United States v. Charlton*

government might prosecute him for future crimes. Indeed, the January 2015 agreement went further by stating:

> ATF cannot promise or agree to any immunity from federal prosecution or specific consideration, since that benefit lies solely with the United States Attorney's Office and the court.

So, although the government ultimately never prosecuted Charlton for the crimes he allegedly committed in January 2015, his cooperation agreement never promised him immunity for those crimes—much less for future crimes. In short, the district court did not commit clear error in finding that no immunity agreement existed for Charlton's crimes in this case.

B.

Charlton also challenges the district court's refusal to suppress his confession, arguing that police coerced him to confess involuntarily through promises of immunity and protection for his family. We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004). To determine whether police coerced a confession, we ask whether (1) what police did was objectively coercive; (2) the coercion was sufficient to overpower the defendant's will; and (3) the alleged misconduct was the crucial motivating factor in the defendant's decision to confess. *See United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016).

Charlton contends that the immunity agreement and the offers to protect his family "make it clear" that the officers' "manipulative and coercive behavior" caused him to confess. Although he mentions the three-part test we apply to claims of coerced confessions, he never explains why what happened here meets any of those parts.

No. 17-5910
*United States v. Charlton*

Charlton's argument fails because the officers' conduct was not objectively coercive. Although promises of leniency can be objectively coercive, *see United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003), as explained above, the district court did not clearly err by finding that officers never promised Charlton leniency. Instead, they simply offered (1) to try to help him if they could and (2) to try to protect his family. Charlton has identified no case holding that such non-committal statements are objectively coercive, and we have found no authority saying as much. To "coerce" means to "compel by force or threat." *Black's Law Dictionary* 315 (10th ed. 2014). Here, the officers' offers to *attempt* to help Charlton neither forced him to confess nor threatened him if he didn't. Coercion is not the same as persuasion, and what the officers did fell into the latter category, not the former. Charlton confessed voluntarily.

C.

Next, Charlton challenges the district court's refusal to give his requested, modified entrapment-by-estoppel instruction. We review the district court's decision for an abuse of discretion. *United States v. Geisen*, 612 F.3d 471, 485 (6th Cir. 2010). And we will reverse only if (1) the rejected instruction correctly stated the law; (2) other instructions did not cover the same information; and (3) the rejection impaired Charlton's theory of the case. *See United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993).

Charlton contends that whether he had an immunity agreement was a factual issue he should have been able to present to the jury. He argues that he had a viable defense if the government promised him immunity, he relied on that promise, his reliance was reasonable, and his reliance made his conviction unfair. And he submits that he presented sufficient evidence for a jury to find his defense persuasive.

-6-

No. 17-5910
*United States v. Charlton*

The district court correctly rejected Charlton's proposed instruction because it lacked evidentiary support. *See United States v. Morgan*, 216 F.3d 557, 566 (6th Cir. 2000). As discussed above, no officer ever promised him immunity. And his prior cooperation agreements never promised him immunity, either—not even for the crimes they related to. Instead, they stated explicitly that the government might prosecute him for future crimes. Charlton's claim fails.

D.

Finally, Charlton challenges the district court's refusal to reduce his offense level for acceptance of responsibility. For us to reverse, Charlton must show by a preponderance of the evidence that a reduction was warranted. *See United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013). When reviewing the district court's decision, we give great deference to factual findings; we will not disturb them unless they are clearly erroneous. *United States v. Hollis*, 823 F.3d 1045, 1047 (6th Cir. 2016) (per curiam).

Charlton argues that he is entitled to the reduction because he (1) admitted that he committed the crimes and (2) only went to trial to assert a legal defense to his guilt: the alleged immunity agreement.

We reject this argument. When a defendant goes to trial, a district court determines whether the acceptance-of-responsibility reduction applies by looking to pretrial conduct, *see* U.S.S.G. § 3E1.1, Application Note 2 (2016), which includes both conduct that demonstrates acceptance and conduct that is inconsistent with it. *See Hollis*, 823 F.3d at 1047. Here, the district court concluded that Charlton's pretrial conduct did not demonstrate acceptance of responsibility. Part of that conduct was Charlton's claim that police told him his case would disappear—a statement the district court found to be untruthful when it determined that police never promised

-7-

No. 17-5910
*United States v. Charlton*

Charlton leniency. To fabricate evidence in an attempt to escape conviction is conduct inconsistent with acceptance of responsibility. On this record, we cannot conclude that the district court clearly erred in finding that the officers did not promise immunity or leniency, and thus that Charlton should not get credit for acceptance of responsibility. Charlton has not met his burden.

III.

For these reasons, we affirm Charlton's convictions and sentence.